IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DOROTHY BROWN, INDIVIDUALLY;  §
PAUL D'ANTUONO, AS PERSONAL    §
REPRESENTATIVE OF THE ESTATE   §
OF LINDA FENTON; and THE       §
ESTATE OF LINDA FENTON         §
                               §
V.                             §        ACTION NO. 4:07-CV-123-Y
                               §
UNITED STATES OF AMERICA       §

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is defendant United States of America's Motion for Summary

Judgment (doc. # 33), filed April 9, 2009.  The Court DENIES the motion.


I.  BACKGROUND

The facts in this case are hotly contested, but no one would dispute that Linda Fenton was

troubled.  When she was twelve, she was in a car accident that resulted in an organic brain injury,

which caused her to have behavioral problems and poor impulse control.  (US App. 153.)  Fenton

spent time in and out of mental hospitals and jail.  In 1997, Fenton was arrested for possession of

a large amount of methamphetamine.  After she was found competent to stand trial, Fenton pleaded

guilty and was housed at FMC Carswell ("Carswell"), beginning November 30, 1999.  (US App.

416, 517.)  Fenton routinely acted out and would exhibit suicidal tendencies, including violently

banging her head and tying things around her neck in attempts to hang or suffocate herself.  (US

App. 82, 458-522.)  One of the staff psychologists believed that Fenton's suicide attempts were

"obviously manipulative" to get her way.  (US App. 520.)  However, Fenton was placed on suicide

watch 18 times from April 1999 through September 2003.  (US App 448-50.)  Along with her

suicide attempts, Fenton was frequently combative with staff, which included biting, kicking, spitting, and throwing toilet water.  (US App. 78, 106.)

In January and February 2004, Fenton was "usually" in control of herself, but continued to have "difficulty" as she had in the past.  (US App. 139.)  She told a nurse that she was "anxious" about her discharge, which was scheduled for February 25.  (US App. 140.)  On February 23, Fenton was in the psychiatric-seclusion unit in an administrative-detention status.[1]  (US App. 418.) Correctional Officer Joe Reamy was the officer on duty, and nurse Deborah Castner was assigned to the psychiatric-seclusion unit that day.  After being told that she could not shave her legs, could not see her friends, and could not speak with a Lieutenant Bishop, Fenton threatened to tie something around her neck, covered her window with toilet paper, and refused to speak further to anyone. (US App. 417-22; Plfs.' App. 25-26.) This occurred at approximately 11:21 a.m.  (US App. 422A.)  About three minutes later, Reamy informed Castner, Fenton's psychiatrist, and the operations lieutenant about the situation and declared a medical emergency.  (US App. 421, 422A, 424; Plfs.' App. 26.)  At 11:25 a.m., when the operations lieutenant also could not get Fenton to respond and was unable to see Fenton in the cell, she authorized a nurse to open the cell door.  (US App. 424, 436.)  The operations lieutenant found Fenton lying at an angle on the bed with her head down between the wall and the mattress.  Fenton had a strip of sheet tightly wrapped around her neck, and her face was a dark shade of blue.  (US App. 424.)  Medical staff began CPR, a "code blue" was called, and an ambulance was requested.  (US App. 424, 435, 437.)[2]  Although Fenton

---

[1]The administrative-detention status was a punishment for Fenton's latest rule infraction.  (Plfs.' App. 76.)

[2]The timing of when the cell door was opened, when the code blue was called, and when the ambulance arrived is disputed, and the summary-judgment evidence from staff on hand at the time of the suicide is conflicting.  (Resp. 12-15; Sur-reply 10-12.)

was transported to a hospital, she died eight days later.

Plaintiffs the Estate of Linda Fenton and Paul D'Antuono, as personal representative of Fenton's estate, (collectively and singularly, "the Estate") brought a negligence action against the government, asserting under the Federal Tort Clams Act that acts or omissions by Carswell staff caused Fenton's death. Fenton's mother, Dorothy Brown, raised a wrongful-death claim, which was dismissed by this Court after Brown's death and was not re-raised by the Estate in its amended complaint. The government seeks judgment as a matter of law on the Estate's claims based on three rationales:

1.     Because this is a medical-malpractice case that raises health-care-liability claims, the Estate was required to submit an expert report establishing the government's negligence. (US Summ. J. Br. 21-42; Reply 12-16.)

2.     There is no genuine issue of material fact showing that the government breached a duty to Fenton or that causation existed. (US Summ. J. Br. 42-46; Reply 16-24.)

3.     If the evidence supports a negligence finding, Fenton should be found contributorially negligent in her suicide. (US Summ. J. Br. 46-49.)

## II. HEALTH-CARE-LIABILITY CLAIM AND EXPERT-REPORT REQUIREMENT

The majority of the government's summary-judgment brief concentrates on the argument that because the Estate's suit is grounded in medical malpractice and, thus, is a health-care-liability claim, Texas law mandates that the Estate submit a medical-expert report that sets out the applicable standards of care, the manner in which the care rendered by the health-care provider failed to meet the standards, and the causal relationship between that failure and the injury.[3] *See* TEX. CIV. PRAC.

---

[3]This argument would have been more properly raised in a motion to dismiss because it is an argument that Plaintiff failed to state a claim upon which relief may be granted based on the absence of a compliant expert report. *See* FED. R. CIV. P. 12(b)(6); *Simonson v. Keppard*, 225 S.W.3d 868, 871 (Tex. App.—Dallas 2007, no pet.) (stating dismissal mandatory if expert report found to be noncompliant under section 74.351). Further, this type of argument does

& REM. CODE ANN. § 74.351(a), (j), (r)(6) (Vernon Supp. 2008).  A health-care-liability claim is statutorily defined as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(1)(13) (Vernon 2005).

The Estate submitted a report from Dr. Jim Womack, a former federal prison psychiatrist, who concluded that Fenton's past actions during her confinement and her specific behavior on February 23 indicated that Carswell staff should have put Fenton on suicide watch, which would have prevented Fenton's suicide.  (US App. 530-47.)  The government argues that Womack's report fails to meet the expert-report requirements recited above, which is fatal to the Estate's suit.[4]

Whether the Estate's claim is a health-care-liability claim that directly relates to the provision of health care is a complex inquiry.  State appellate courts have reached differing conclusions regarding what is and what is not a health-care-liability claim.  *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 849-54 (Tex. 2005) (nursing-home resident who was injured in two falls and was sexually assaulted by another resident had health-care-liability claim); *Harris Methodist Fort Worth v. Ollie*, 270 S.W.3d 720, 727 (Tex. App.—Fort Worth 2008, pet. filed) (holding hospital patient who slipped while getting out of bathtub did not have health-care-liability claim); *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 354-56 (Tex. App.—San Antonio

---

not raise the absence of fact issues, but is rather an issue of law.

[4]To the extent the government's argument could be seen as an admissibility attack regarding Fenton's report, the government has failed to brief the applicable law and how it applies to Fenton's proposed expert testimony. *See* FED. R. EVID. 702, 703; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995).  Thus, this Court will not address such an evidentiary argument.

2008, no pet.) (holding patient's claim against medical center that center negligently hired, trained, and supervised nurse who sexually assaulted patient fell within definition of health-care-liability claim); *Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278, 284-87 (Tex. App.—Texarkana 2008, pet. filed) (holding claims regarding nursing-home resident who died as result of spider bite were not health-care-liability claims); *Marks v. St. Luke's Episcopal Hosp.*, 229 S.W.3d 396, 402 (Tex. App.—Houston [1st Dist.] 2007, pet. granted) (holding patient's claims alleging hospital breaches of duty of ordinary care relating to inadequate staff supervision, failure of assistance, and negligently attached hospital bed were health-care-liability claims); *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 419 (Tex. App.—El Paso 1999, no pet.) (holding patient's claim against home nursing company for negligent placement of supply bag that fell and re-injured patient was not health-care-liability claim).   Basically, the determining factors in identifying a health-care-liability claim are whether the claim requires expert medical testimony to aid the fact-finder and whether the act or omission complained of is inseparable from the rendition of medical services and the accepted standards of safety within the health-care industry.  *See, e.g., Ollie*, 270 S.W.3d at 727.

In this case, the Estate's claim is related to the accepted standard of safety within the correctional community.  Although the government asserts that the Estate's claim is one that necessarily implicates medical judgment, the Estate is specifically attacking standards of safety within Carswell and the alleged breach of internal operating and safety procedures.  This is not a case raising breaches of the medical standard of care as intended by the Texas statute.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 historical & statutory notes (Vernon 2005).   Thus, a compliant expert report was not required.[5]

---

[5]Further, there is a serious question regarding whether Reamy and Carswell are health-care providers under the statute.  (Resp. 18-23.)  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12) (Vernon 2005).

5

However, even if the Estate's claim was characterized as a health-care-liability claim, the government's lack of a timely objection to Womack's report waives the government's attacks on its sufficiency. (Resp. 49.) Although a compliant expert report must be filed no later than 120 days after the original petition was filed, any objections to the sufficiency of the report must be filed no later than 21 days after the date the petition is served. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6) (Vernon Supp. 2008). If the objections are not timely filed, they are waived. *See id.* The government does not assert that it timely filed objections to the sufficiency of Womack's report. Indeed, the government first challenged the report in its motion for summary judgment. But the government asserts, with no citation to authority, that the objection deadline is a procedural requirement that does not apply in federal litigation. (Reply 24.) This argument is inconsistent and, thus, unpersuasive. The expert-report statute, including the requirements of a complaint report and timely objections, is contained in a subchapter entitled "PROCEDURAL PROVISIONS." *Cf. Lookshin v. Feldman*, 127 S.W.3d 100, 105 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (characterizing expert-report requirement as procedural). If the government desires to enforce the procedural requirements of a compliant expert report, it would seem that it must also comply with the timeliness requirement of any objections. This Court concludes that the government's objections to the sufficiency of Womack's report, even if an expert report is required in this case, are waived.

## III.  NEGLIGENCE

The government next asserts that the Estate has failed to establish negligence because there is no genuine issue of material fact either as to whether the government breached a general duty to

Fenton or as to causation.[6]  (Summ. J. Br. 42-45; Reply 16-24.)  Negligence is comprised of the existence of a legal duty, a breach of that duty, and damages proximately cause by the breach.  *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  As correctly cast by the government, the Estate asserts that Reamy failed to follow internal procedures regarding suicidal inmates.  (Reply 16.)

### A.  SUMMARY-JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however.  Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not

---

[6]The government cursorily asserts that some of the staff's actions are covered by the discretionary-function exception to liability under the Federal Tort Claims Act.  (Summ. J. Br. 29 n.6, 49 n.20.)  However, these superficial statements are not sufficient to raise this exception as a serious impediment to denying the government's summary-judgment motion.

significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

## B. BREACH OF DUTY

The government agrees that it owed a duty to Fenton, but disputes "that there is a genuine issue of material fact regarding whether the [government] breached a general duty to Fenton." (Reply 16.)  The Estate asserts that the staff at Carswell breached their duty to Fenton by their delayed reactions to Fenton's threats on February 23 and by failing to follow internal procedures regarding (1) required actions when changes in an inmate's mood or behavior are noted and (2) making required thirty-minute rounds.  (Plfs.' App. 2, 15; Resp. 9-10, 32-35.)  As discussed by the Estate in its summary-judgment briefing, there are many discrepancies in the evidence regarding the timing of the staff's actions, Fenton's actions, and the existence of apparent departures from established procedures.  (Resp. 10-15, 32-35; US App. 422A; Sur-reply 2-4.)  The government asserts that the Estate, in effect, is arguing that the staff was negligent per se in failing to follow the internal procedures.  (Summary J. Br. 45-46; Reply 17-18.)  However, the Estate's argument is not solely that a violation of a procedure is per-se negligent, but rather that such a violation raises a fact

8

issue that the staff breached its duty to Fenton. Indeed, the summary-judgment evidence is conflicting regarding whether Reamy violated internal procedures regarding immediate notification of psychology services when an inmate's behavior changes, required 30-minute patrols, and other procedures.[7] (Defs.' App. 418, 421; Plfs.' App. 206-16.) Further, there are many timing discrepancies in the staff's logs regarding when certain actions were taken. (Resp. 5-8.) As pointed out by the Estate, these actions and inactions, if believed by a fact-finder, would tend to show that the government breached its duty to protect Fenton. (Resp. 31-35; Sur-reply 7-12.) These fact questions on material issues prevent this Court from concluding that the government is entitled to judgment as a matter of law regarding breach of an admitted duty. (Sur-reply 7-12.)

## C. CAUSATION

The government similarly asserts that there is no fact issue regarding whether the staff's actions or inactions caused Fenton's death. Proximate cause consists of foreseeability and cause in fact. *See D. Houston*, 92 S.W.3d at 454. Foreseeability inquires whether a person of ordinary intelligence would have anticipated the danger his act created. *See S.W. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). There may be more than one proximate cause of an event.

In this case, Fenton's previous repeated attempts to kill herself provide the requisite amount of foreseeability required to circumvent a summary-judgment motion. Even though some of

---

[7]The government argues that the internal procedures were not mandatory. However, the language of the procedures conflicts on their mandatory nature. (Plfs.' App. 2, 14-16.) Further, the procedures seem to prescribe a set court of action, which would impose a mandatory duty on Reamy. *See*

Fenton's suicide attempts were viewed as manipulations to get her way, Fenton seriously did try to kill herself on more than one occasion while at Carswell.  (Plfs.' App. 157-62.)  Further, the fact issues pointed out regarding breach of duty tend to show that the actions, inactions, and delays complained of could be a cause in fact of Fenton's successful suicide attempt.  (Resp. 37-42.)


## IV.  COMPARATIVE NEGLIGENCE

The government's final argument is that even if it is found to be negligent, any award for the Estate should be reduced by the portion for which Fenton herself was responsible.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 93.001(a)(2) (Vernon 2005).  This section allows a defendant to raise a plaintiff's attempted suicide as an affirmative defense (within the context of determining a plaintiff's percentage of responsibility) if:

> the plaintiff, at the time the cause of action arose, was . . . committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense.

*Id.*  The government seems to be asserting that proportionate responsibility should be determined by a jury in light of Fenton's history of uncooperativeness and noncompliance.  (Br. in Supp. of Mot. for Summ. J. 46-48.)  This type of argument is inappropriate in light of the material fact issues on negligence noted above.  These fact issues directly impact how much responsibility Fenton should shoulder in her own death.  *See Evans v. City of Marlin, Tex.*, 986 F.2d 104, 109 (5th Cir. 1993) (holding evidence creating material fact issue that defendants' negligence partially played role in suicide precluded summary judgment on section 93.001 defense).

10

## V.  CONCLUSION

The Estate's claim is not a health-care-liability claim; thus, a statutory expert report is not required.  But even if the Estate were raising such a claim, the government waived its challenge by failing to timely object.  Because of multiple fact issues discussed by the Estate in its summary-judgment briefing, this Court cannot grant the government judgment as a matter of law on the Estate's negligence claim.  *See generally Anderson* 477 U.S. at 249 (holding courts, on summary-judgment review, are not to make factual resolutions when presented with conflicting evidence on material issues).  Finally, the government's comparative-responsibility argument fails on summary judgment based on the negligence fact issues.

SIGNED August 17, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

11